UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KATHY NISWANDER, | ) | CASE NO. 5:06CV1086 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | |
| THE CINCINNATI INSURANCE | ) | **MEMORANDUM OPINION & ORDER** |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

The above case is before the undersigned[1] on a motion for summary judgment filed by Defendant The Cincinnati Insurance Company (Defendant) and a motion for summary judgment on Defendant's counterclaim filed by Plaintiff Kathy Niswander (Plaintiff). ECF Dkt. #s 90, 91. For the following reasons, this Court GRANTS Defendant's motion for summary judgment (ECF Dkt. #90) and DISMISSES Plaintiff's amended complaint WITH PREJUDICE (ECF Dkt. #51). *Id.* The Court also GRANTS Plaintiff's motion for summary judgment on Defendant's counterclaim (ECF Dkt. #91) and DISMISSES Defendant's counterclaim WITH PREJUDICE (ECF Dkt. #7).

**I.      FACTS AND PROCEDURAL HISTORY**

Plaintiff worked out of her home for Defendant as a claims adjuster from March 11, 1996 through December 5, 2005 when Defendant terminated her employment. ECF Dkt. #51 at 2. Plaintiff had both positive and negative performance evaluations over the tenure of her employment with Defendant. ECF Dkt. #90 at 4-5; ECF Dkt. #103 at 3-4. In December 2003, Plaintiff filed a consent form opting into the Equal Pay Act (EPA) collective discrimination action against Defendant entitled *Arlene Rochlin v. Cincinnati Insurance Company*, Case No.

---

[1]  The parties consented to the jurisdiction of the undersigned on July 14, 2006. ECF Dkt. #15.

1:00CV1898-DFH-TAB, which was litigated in the United States District Court for the Southern District of Indiana (*Rochlin*).

In the *Rochlin* case, the parties agreed to a Stipulated Protective Order for the Protection of Confidential Information (Protective Order) in order for confidential information to be exchanged during the discovery process.  ECF Dkt. #103, Exhibit A. Plaintiff was among the plaintiffs in the *Rochlin* matter that signed a confidentiality agreement to be bound by the Protective Order.  The Protective Order provided in relevant part that "Either party, may at the time of production, designate such information as 'confidential' and the information so designated shall thereafter be subject to the provisions of this order." *Id.*

Plaintiff alleges that after she opted in to the *Rochlin* lawsuit, she believed that her supervisor Richard Baldwin was retaliating against her because she was participating in the *Rochlin* matter.  ECF Dkt. #104 at 2-3.  She avers that Mr. Baldwin used to regularly call her to discuss claims and provide her feedback on her claims once a week and stopped calling after the she joined the *Rochlin* lawsuit and only e-mailed her instead.  On September 15, 2004, Plaintiff alleges that she contacted Robert Miller of the human resource department and told him that she thought that Mr. Baldwin was retaliating against her because of her participation in *Rochlin*.  *Id.* at 3.  She also informed Mr. Baldwin by e-mail and forwarded to Mr. Miller a copy of her e-mail to Mr. Baldwin.  *Id.*  Plaintiff requested a transfer in August of 2005 after she did not receive her yearly evaluation and indicated that she felt that her supervisor was not providing the support that a field claims supervisor should provide.  *Id.*  The transfer was denied.  *Id.*

On September 20, 2005, Plaintiff avers that she was placed on the Progressive Problem Resolution Program (PPR) for the first time in her career with Defendant.  ECF Dkt. #104 at 4. On October 21, 2005, Plaintiff filed a charge of discrimination with the EEOC after she alleged that Defendant failed to acknowledge her retaliation complaint and placed her on PPR.  *Id.*

Also in September 2005, Plaintiff avers in her amended complaint that one of her attorneys in the *Rochlin* lawsuit sent her two letters stressing that she needed to provide her attorneys with any documents related to her employment with Defendant which she had not already sent.  ECF Dkt. #104 at 5.  The letter specifically requested that Plaintiff look around her

house and office for documents that may be even remotely helpful to the case. *Id.* Plaintiff mailed additional company documents that she found in her home to her counsel because she thought that she had to provide Defendant with all of the documents supporting her claims. *Id.* Plaintiff alleged that she believed that Defendant had requested documentation concerning her discrimination claim and that the production of these documents would remain confidential between her attorneys and Defendant. ECF Dkt. #104 at 6. Plaintiff asserts that she provided these documents to her counsel with the understanding that Defendant had requested these documents in the *Rochlin* case. *Id.* at 5.

Defendant asserts that it terminated Plaintiff's employment because she violated its Code of Conduct, its Privacy Policy and Conflict of Interest Policy which required Plaintiff not to remove, misuse or disclose confidential or proprietary information. ECF Dkt. #62 at 3. Defendant contends that sometime after Plaintiff opted in to the *Rochlin* lawsuit, Plaintiff's *Rochlin* counsel  told her that they were planning to bring a retaliation claim against Defendant and Plaintiff should collect any of Defendant's documents that she thought would help them with this future retaliation claim. ECF Dkt. #90 at 6-7, citing Exhibit C Niswander Depo. II at 174-175, 177. Defendant claims that Plaintiff secretly gathered stacks of confidential and proprietary documents of Defendant's insureds and their claims and sent them directly to her counsel without asking Defendant's permission or seeking approval. *Id.* Defendant further claims that Plaintiff admitted in her deposition in the *Rochlin* case that she had removed these documents and disclosed confidential documents to her third-party counsel not for work-related purposes, but to support a future retaliation claim. *Id.* Defendant further asserts that Plaintiff's counsel then turned over some of those documents to Defendant's outside counsel. *Id.*

Defendant also indicates that once it knew that Plaintiff violated its policies, it had to decide the proper penalty, which was left to the Manager of the Field Claims Department, Charles Stoneburner, who decided to terminate Plaintiff's employment due to the violations. ECF Dkt. #90 at 7, citing Exhibits F and G at 23-28, 32, 49. Mr. Stoneburner terminated Plaintiff's employment on December 5, 2005. *Id.*

On November 14, 2006, Plaintiff filed an amended complaint in this Court alleging that Defendant, her former employer, violated the Equal Pay Act, 29 U.S.C. §215(a)(3) and Title VII, 42 U.S.C. §2000e-3(a) by wrongfully discharging her from employment after she opted in as a party plaintiff in *Rochlin*.  ECF Dkt. #51.  Plaintiff avers that after she began participating in the *Rochlin* case, Defendant knew about her protected activity and Defendant:

> engaged in a pattern of retaliation that included disciplining the Plaintiff without cause; denying the Plaintiff a requested transfer; excluding the Plaintiff from activities provided for similarly situated employees; providing a negative performance evaluation; putting the Plaintiff on a performance improvement plan without giving the Plaintiff any objectives to achieve; ignoring its progressive discipline policy and finally terminating the Plaintiff's employment on December 6, 2005, without any legitimate business reason.

*Id*. at 4, ¶15.

Defendant filed a timely answer to Plaintiff's amended complaint.  ECF Dk. #62.  In its original answer, Defendant had asserted a counterclaim against Plaintiff for conversion based upon her alleged misappropriation of company documents and the taking of its clients' confidential documents and information which deprived Defendant of its property and subjected it to potential liability.  ECF Dkt. #7.

On February 15, 2007, Defendant filed the instant motion for summary judgment, requesting that the Court grant summary judgment on all of Plaintiff's claims.  ECF Dkt. #90.

On February 16, 2007, Plaintiff filed her own motion for summary judgment on Defendant's counterclaim.  ECF Dkt. #91.  Both parties have filed briefs in opposition to the other's motion for summary judgment and each has filed a reply. ECF Dkt. #s 101, 103, 110, 111.

## II.     SUMMARY JUDGMENT

### A.      STANDARD OF REVIEW

The function of summary judgment is to dispose of claims without trial when one party is unable to demonstrate the existence of a factual dispute which, if present, would require resolution by a jury or other trier of fact.  *Schultz v. Newsweek, Inc.*, 668 F.2d 911, 918 (6th Cir. 1982).  Rule 56(c) of the Federal Rules of Civil Procedure governs summary judgment motions and provides, in pertinent part:

4

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

FED. R. CIV. P. 56(C).  The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion, and must identify the portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)(quoting FED. R. CIV. P. 56(c)).  The moving party can discharge this burden by showing that the nonmoving party has failed to establish an essential element of the nonmoving party's case for which he or she bears the ultimate burden of proof at trial.  *Celotex*, 477 U.S. at 323; *Morales v. American Honda Motor Co., Inc.,* 71 F.3d 531, 535 (6th Cir. 1995).  The evidence submitted is viewed in a light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).  If the moving party meets this burden, then the nonmoving party must take affirmative steps to avoid the entry of a summary judgment.  FED. R. CIV. P. 56(e).  The nonmoving party must present additional evidence beyond the pleadings and must do so by presenting more than a scintilla of evidence in support of his or her position.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

The Court must grant summary judgment unless sufficient evidence exists that favors the nonmoving party such that a judge or jury could  reasonably return a verdict for that party. *Anderson,* 477 U.S. at 249.  The court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.*  If a party fails to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," then the court is required to enter summary judgment.  *Celotex*, 477 U.S. at 322.

**B.** **LAW AND ANALYSIS**

The undersigned will address Defendant's motion for summary judgment first.

**1.** **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF DKT. #90)**

**a.** **PRE-TERMINATION CONDUCT**

Defendant first asserts that the settlement agreement and release that Plaintiff signed in the *Rochlin* case bars her allegations of pre-termination retaliation relating to denying Plaintiff a requested transfer, excluding her from activities provided for similarly situated employees, providing a negative performance evaluation, putting her on a performance improvement plan without giving her objectives to achieve; ignoring its progressive discipline policy. ECF Dkt. #90 at 8-9. Defendant contends that these claims are barred because the settlement agreement and release's language indicated that in exchange for consideration, Plaintiff agreed to release any and all possible claims against Defendant as of the date of the release, which was July 27, 2006, except for a claim that she was discharged from employment based upon retaliation. ECF Dkt. #90 at 8-9.

In Plaintiff's brief in opposition to Defendant's motion for summary judgment, she counters that the *Rochlin* settlement agreement and release does not bar pre-termination claims because the agreement expressly reserved all claims in the instant lawsuit and the instant action was pending at the time of the settlement agreement in *Rochlin*. ECF Dkt. #103 at iv. She further contends that Defendant's pre-termination conduct is admissible to establish its retaliatory animus. *Id.* Nevertheless, Plaintiff asserts that Defendant misunderstands her claim because she is presenting the pre-termination conduct of Defendant in order to show that it culminated in the termination of her employment and she is only seeking economic damages and reinstatement in association with the termination of her employment. *Id*. at 8.

Since Plaintiff concedes that the pre-termination incidents in her amended complaint are used only to bolster her claim of retaliatory termination of her employment for participating in the *Rochlin* lawsuit, the Court need not decide the issue of whether these claims were released in

6

the *Rochlin* settlement because they are not actually presented as claims in the instant case. Further, Plaintiff does not mention these pre-termination issues in her response to Defendant's motion for summary judgment as she focuses solely on the claim of retaliatory termination of her employment.  Thus, the only claims that the Court considers as presented and pending in Plaintiff's amended complaint are those relating to the alleged retaliatory termination of her employment by Defendant.

### b.  **TERMINATION OF EMPLOYMENT**

Defendant moves for summary judgment on Plaintiff's EPA and Title VII retaliation claims for the termination of her employment, arguing that Plaintiff cannot establish the essential elements of a *prima facie* case of retaliation because she cannot show a causal connection between her joining in the *Rochlin* lawsuit and the termination of her employment.  ECF Dkt. #90 at 14.  Defendant further asserts that even if she could establish a *prima facie* case, Plaintiff cannot show that Defendant's reasons for terminating her employment were pretextual as it had legitimate nondiscriminatory reasons for terminating her employment when she violated its confidentiality provisions and policies.  *Id.*

The anti-retaliation provision of the Equal Pay Act provides that it is illegal to retaliate against an employee because she has participated in a protected activity such as filing a complaint or testifying in an EPA proceeding.  29 U.S.C. §215(a)(3).  Title VII forbids discriminating against an employee because the employee has "opposed" a practice that Title VII prohibits or has "made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing."  42 U.S.C. §2000e-3(a).  In order to establish a *prima facie* case of retaliation under either the EPA or Title VII, Plaintiff must show that: (1) she engaged in a protected activity; (2) Defendant knew that she engaged in the protected activity; (3) as a result of Plaintiff exercising her protected rights, Defendant took employment action adverse to her; and (4) a causal connection exists between the protected activity and the adverse employment action.  *Vehar v. Cole Vision Corp.,* No. 5:05CV1367, 2006 WL 2882867 at *13 (N.D.Ohio 2006), citing *EEOC v. Romeo Community Schools,* 976 F.2d 985, 989 (6th Cir.1992); *Fenton v. HiSAN,* 174 F.3d 827, 831 (6th Cir.1999) (citing *EEOC v. Avery Dennison Corp.,* 104 F.3d 858,

7

860 (6th Cir.1997)).  Once the plaintiff establishes a *prima facie* case of retaliation, the burden of production of evidence shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for its actions. *Morris v. Oldham County Fiscal Court,* 201 F.3d 784, 792-93 (6th Cir.2000)(quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  The plaintiff then must demonstrate "that the proffered reason was not the true reason for the employment decision." *Id.* at 793 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256,101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The plaintiff bears the burden of persuasion throughout the entire process. *Id.*  A plaintiff can demonstrate an employer's pretext by showing by a preponderance of the evidence that the employer's proffered reason for the adverse employment action (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

In its motion for summary judgment, Defendant does not dispute that Plaintiff engaged in protected activity when she joined the *Rochlin* lawsuit.  ECF Dkt. #90 at 10.  However, in its reply brief, Defendant challenges whether the "stealing" of documents by Plaintiff is a protected activity.  ECF Dkt. #110 at 7-12.  Defendant also argues that Plaintiff cannot establish the *prima facie* element of a causal connection between joining the *Rochlin* litigation and the termination of her employment.  ECF Dkt. #90 at 14.  Defendant concentrates on Plaintiff's initial joining of the *Rochlin* lawsuit rather than her continued participation in the lawsuit in order to support its defense.  *Id.* at 10.  Defendant asserts that Plaintiff cannot meet the causation element of her *prima facie* case of retaliation because she cannot show a causal connection between her protected activity and the termination of her employment due to the time lag between the joining of the *Rochlin* lawsuit in 2003 and the termination of her employment in 2005.  *Id.* at 14.  Further, Defendant maintains that Plaintiff cannot establish the causal connection because Plaintiff herself admitted in her deposition that Defendant discharged her from employment because it honestly believed that Plaintiff stole confidential company documents in violation of policy and not because she joined the *Rochlin* lawsuit.  *Id.*, citing ECF Dkt. #90, Exhibit C, Part II at 203-205.

8

Plaintiff argues in opposition that the protected activity in her *prima facie* case of retaliation is not only her *opposition* to Defendant's alleged unlawful retaliation against her, but also her *participation* in the *Rochlin* lawsuit and the filing of her EEOC charge in October 2005. ECF Dkt. #103 at 11.  Plaintiff also asserts that she engaged in additional protected activity when she participated in the discovery process in *Rochlin* by providing documents and information to her attorney in order to respond to what she believed were the discovery requests of Defendant. ECF Dkt. #103 at 16-17.  Plaintiff maintains that in responding to the production of documents request, she provided documents to her counsel that "came into her possession in the regular course of business."  *Id.* at 17.  Plaintiff cites to Mr. Stoneburner's deposition testimony where he stated that all of the documents that Plaintiff provided to her attorney in the *Rochlin* matter came into her possession in the regular course of business.  *Id.* at 18, citing Stoneburner Depo. at. 80. Plaintiff asserts that she provided the documents at her counsel's request for what she believed to be a request from Defendant and therefore she innocently acquired the documents.  ECF Dkt. 103 at 18.  Further, Plaintiff contends that this act even extends beyond innocent acquisition of the documents because she believed that she was producing the documents that she obtained pursuant to her participation in the *Rochlin* lawsuit.  *Id.*

The Court finds that Plaintiff has not met the protected activity element of her *prima facie* case.  In general, opposing retaliation for participating in an EPA lawsuit and participating in the lawsuit itself are indeed protected activities.  However, the Court is not convinced that Plaintiff's taking of Defendant's confidential claims files and documents without permission and giving them to her attorney for a future lawsuit for retaliation qualifies as a protected activity, even though these documents were used by Plaintiff in the regular course of her business from home for Defendant.  While Defendant initially cites to *Watkins v. Ford Motor Company,* No. C-1-03-033, 2005 WL 3448036 (S.D. Ohio Dec. 15, 2005), unpublished, to support a lack of pretext argument, that case is actually also instructive in determining whether Plaintiff's actions in this case constitute a protected activity.

In *Watkins*, the plaintiff-employee admitted in a deposition taken in connection with his failure to promote lawsuit that prior to his filing the lawsuit against his employer, he had copied

and given his attorney unmarked confidential personnel information that was left out in plain site

of the common area of the salaried personnel office of the plant.  He indicated that he "innocently

acquired" the information because it was out in plain view.  He stated that upon his review of the

files, he found evidence of discrimination.  After defendant discovered that plaintiff had copied

and disclosed this confidential employer information to his attorney, it terminated plaintiff's

employment and plaintiff thereafter filed a second lawsuit against defendant for retaliation.

Plaintiff admitted that he did not have permission to copy the files and provide them to his

attorney, but he argued that "providing 'innocently discovered documents' that he believed to be

evidence of unlawful discrimination to his attorney was protected activity and discharging him

for this protected activity was unlawful retaliation." 2005 WL 3448036 at *6.

The United States District Court for the Southern District of Ohio, Western Division,

found that plaintiff's copying and disclosure of the confidential personnel files of his employer

was not a protected activity under Ohio's anti-retaliation statute, which tracks Title VII

retaliation and follows federal caselaw.  *Watkins*, 2005 WL 3448036 at *7.  The Court held:

> The Court finds untenable plaintiff's position that his copying and disclosure of the
> personnel information is activity that is protected under Ohio's anti-retaliation
> law. Accepting as true his allegations that he found the profiles in a book that had
> been left out in the open, the papers were not marked as confidential, and he
> disclosed the profiles only to his counsel, his conduct cannot reasonably be
> construed as protected activity. As noted by defendant, if the Court were to adopt
> plaintiff's argument that such conduct is protected activity, "plaintiffs everywhere
> would be entitled, under the umbrella of protected activity, to steal company
> information and, so long as they give the information to their lawyer, not only be
> able to avoid disciplinary action by their employer, but also be empowered to
> successfully maintain a claim against their employer if adverse action is taken for
> the misconduct.  *See* defendant's reply brief, p. 4. This result finds no support in
> Ohio law and is not one the Court is willing to countenance absent compelling
> authority requiring it to do so. Far from being entitled to protection under the law,
> plaintiff's conduct was counterproductive, wrongful, and a breach of his
> employer's trust.

*Id*.  The Court noted that both parties had cited federal law in support of their positions, but the

case cited by plaintiff, *Kempcke v. Monsanto Co.*, 132 F.3d 442, 445-447 (8th Cir. 1998) was

distinguishable because the employee in that case had "innocently acquired" the information that

he disclosed as it was discovered in a computer assigned to him by the employer.  *Id.*  The

10

*Watkins* court applied the *Kempcke* court's reasoning that ""when documents have been innocently acquired, and not subsequently misused, there has not been the kind of employee misconduct that would justify withdrawing otherwise appropriate § 623(d) protection." *Watkins*, 2005 WL 3448036 at *7, quoting *Kempcke*, 132 F.3d at 446.  The *Kempcke* court had found that a reasonable jury could have determined that the employee's conduct in discovering the documents and giving them to his attorney was protected activity.  *Watkins*, 2005 WL 3448036 at *7.  The *Watkins* court found that in its case, a reasonable jury could not determine that the documents were "innocently acquired" as in *Kempcke* because even though plaintiff happened upon the binder containing the personnel files and started looking through them, he then "looked through the profiles to find information, copied the profiles even though he admittedly did not have the authority to do so, and provided copies to his attorney." *Id.*

The *Watkins* court likened its case to that of the plaintiff in *O'Day v. McDonnell Douglas Helicopter Co.,* 79 F.3d 756 (9th Cir. 1996), a Ninth Circuit case where the plaintiff-employee who had been denied a promotion rummaged through a supervisor's desk and found documents in a closed drawer marked "personal/sensitive" and copied the documents and provided them to an employee who was going to be laid off.  The plaintiff was thereafter laid off himself and then fired after his employer learned of his misconduct.  The plaintiff claimed that his conduct was protected activity under the anti-retaliation provision of the ADEA because he was preserving evidence for a future lawsuit against the company. The *O'Day* court held that the plaintiff's conduct was not a protected activity because he "had committed a serious breach of his employer's trust, not only in rummaging through his supervisor's office for confidential documents, but also in copying those documents and showing them to a co-worker." *Id.* at 763.

11

The court stated that it was "loathe to provide employees an incentive to rifle through confidential files looking for evidence that might come in handy later in litigation.  The opposition clause [of the ADEA] protects reasonable attempts to contest an employer's discriminatory practices; it is not an insurance policy, a license to flaunt company rules or an invitation to dishonest behavior." *Id.* at 763-764.

In applying *O'Day* to its case, the *Watkins* court held:

> Like the plaintiff in *O'Day,* plaintiff here committed a serious breach of trust by looking through defendant's files and copying documents that obviously were not intended for general inspection and then providing those documents to his attorneys. The fact that plaintiff purportedly obtained the documents for use in a lawsuit does not excuse his conduct, particularly since plaintiff could have sought that information by securing counsel and going through the proper legal channels. A reasonable jury could not find plaintiff engaged in a legitimate means of preserving evidence by copying sensitive employee information maintained by his employer that had not been provided to him and removing the copies from defendant's property. Such conduct cannot be sanctioned as protected activity as a matter of law. Thus, a reasonable jury could not find that defendant violated Ohio's anti-retaliation law by firing plaintiff for that conduct.

*Watkins*, 2005 WL 3448036.

In the instant case, Plaintiff already had Defendant's confidential client and claims documents in her possession by virtue of the fact that she worked out of her home.  However, like the plaintiff in *Watkins*, Plaintiff here began looking through those files for specific information relevant and helpful to her future claim of retaliation, not a business purpose, and provided these confidential documents to her attorney without Defendant's permission and clearly in violation of Defendant's confidentiality policies of which she was aware.  And whether she was retrieving this information to support a future claim or for the *Rochlin* matter does not excuse Plaintiff's acts, especially, as in *Watkins*, Plaintiff's attorney could have obtained the

information through the proper legal channels of discovery.

Plaintiff testified in her deposition that she looked through her files of Defendant's clients that she had in her possession and provided to her *Rochlin* counsel those documents that she felt were relevant to her Equal Pay Act claim and her future claim of retaliation against Defendant without permission.  ECF Dkt. #90, Exhibit A. Pt. 1 of 2 at 52-56. Plaintiff also testified that she knew Defendant's policy and Code of Conduct regarding the confidentiality of client's claims and personal information and its prohibition against using these documents for any other purposes except those relating to her employment or removing these documents without obtaining company permission.  *Id.* at 35-37.  Among documents provided to her counsel were claims file information of dates of loss, names, and policy numbers, those relating to a client's private medical information, a claim for loss by a church, and a picture of a house owned by a claimant.  *Id.* at 51-57; ECF Dkt. #90, Exhibit B, Pt. 2 of 2 at 177-185, 191-194.  However, Plaintiff could not recall how these documents related to her claims and/or future claim against Defendant at the time, although she explained that she kept some of them because they helped trigger her memory of "retaliatory" conversations and incidents that had arisen from the files.  *Id.* She indicated that she took some of the documents "to her lawyers for personal reference for retaliation which Cincinnati was requesting documentation."  ECF Dkt. #90, Exhibit B, Pt. 2 of 2 at 196.  Plaintiff testified that she followed her attorney's instructions to provide documentation supporting her claims against Defendant or face dismissal of her cause of action as she was under the impression that the court had issued an order commanding production documentation to Defendant in order to support her claims.  ECF Dkt. #90, Exhibit C, Pt. 2 of 2 at 185-187. Plaintiff repeatedly stated that she did not believe that she did anything wrong by producing

13

private client information to her counsel in the *Rochlin* lawsuit because she thought that the documents would remain confidential as she was acting through the course of discovery within *Rochlin* and she had to respond to Defendant's request for the production of documents to support her claims of retaliation.  *Id.* at 203-204.

In applying the balancing test of *O'Day* to the instant case, the Court finds that Defendant's interest in ensuring compliance with its policies of privacy and the law, and maintaining the confidentiality of its clients' personal information outweighs Plaintiff's interest in preserving what she considered to be evidence of unlawful retaliation on the part of Defendant. This is so especially in light of the fact that Plaintiff could have preserved this evidence without violating the law and her employer's policy and trust as she could have taken notes of the incidents that she felt spurned retaliation instead of taking pictures and claims file information that jogged her memory of these incidents and giving them to her attorney.  Moreover, this "evidence" that Plaintiff handed over to her attorney does not prove retaliation in and of itself as Plaintiff herself admitted that the documents that she gave her attorney relating to claims file information only served to trigger her memory about incidents which she believed constituted retaliation. ECF Dkt. #90, Exhibit B, Pt. 2 of 2 at 196-197.

For these reasons, the Court finds that Plaintiff cannot show that she was engaging in a protected activity when she handed over client and claims documents to her counsel in the *Rochlin* case.  Accordingly, Plaintiff cannot establish a *prima facie* case of retaliation under the Equal Pay Act or Title VII and the Court therefore grants Defendant's motion for summary judgment and dismissed Plaintiff's amended complaint with prejudice.  ECF Dkt. #90.

14

Even if Plaintiff could establish that production of the documents fell under the protected activity element of her participation in the *Rochlin* lawsuit and Defendant knew of her protected activity, which Defendant in part disputes, Defendant asserts that no causal connection exists between Plaintiff's joining of the *Rochlin* lawsuit and the termination of her employment because a two-year time lag existed between the two as Plaintiff joined the *Rochlin* lawsuit in 2003 and Defendant did not terminate her employment until 2005.  ECF Dkt. #90 at 14, citing *Bacon v. Honda Mfg.*, 192 Fed. Appx. 337, 344 (6th Cir. 2006); *Timm v. Wright State Univ.*, 375 F.3d 418, 423 (6th Cir. 2004); *Hafford v. Seidner*, 183 F.3d 506, 515 (6th Cir. 1999).  Defendant also asserts that no evidence in the record exists from which Plaintiff could show that her employment would not have been terminated absent her opting into the *Rochlin* lawsuit.  ECF Dkt. #90 at 14.

Plaintiff stresses that her protected activity was not only joining the *Rochlin* lawsuit, but also participating in the lawsuit.  The Court agrees.  Thus, the two-year period of time about which Defendant argues lack of connection is without merit.  Defendant here concentrates on Plaintiff's joining of the *Rochlin* lawsuit as opposed to her continuing participation in the lawsuit, which endured through the termination of her employment in 2005.  ECF Dkt. #103 at 8. Accordingly, Plaintiff was still involved in the *Rochlin* lawsuit before and up through her termination of her employment in 2005 and no time lag existed between the termination of her employment and her *participation* in the *Rochlin* lawsuit.

Plaintiff also counters that genuine issues of material fact remain as to the causal connection element and whether Defendant's conduct was merely pretext to hide retaliation. ECF Dkt. #103 at 19.  She points to Defendant's lack of preservation by Defendant of the confidentiality of client documents once she produced the documents as evidence that Defendant

15

was not truly concerned about the confidentiality of the documents and thus fired her because of retaliation.  *Id.* at 20.  Plaintiff points out that Defendant could have marked all of the documents as confidential in compliance with the parties Stipulated Protective Order in *Rochlin*, but Defendant did not do so, including counsel for Defendant Jack Harrison, who appeared at a deposition with documents supposedly confidential but not marked as such.  *Id.* at 21.  Plaintiff cites to the depositions of Attorney Teresa Cracus, Attorney Lisa Love, Vice-President, Director of Personnel and Community Relations Greg Ziegler, Assistant Vice-President of Personnel Brian Wood, and Vice President, Manager of Field Claims Charles Stoneburner as support for the lack of knowledge and concern about confidentiality of the documents that she produced or the action that these top level employees took to protect the confidentiality of these documents produced by Plaintiff that resulted in her firing.  *Id*. at 22-23.

However, Defendant produces sufficient evidence showing that it terminated Plaintiff's employment not because she joined and participated in the *Rochlin* lawsuit or because she filed an EEOC charge, but because she violated the company's Code of Conduct and other policies when she took confidential company documents relating to clients and gave them to her attorney for use in another lawsuit and/or in a potential retaliation claim not yet filed.  This undermines not only Plaintiff's *prima facie* case establishing a causal connection between the termination of her employment and participating in the discovery process in *Rochlin*, but it also shows that the Defendant had a legitimate, non-discriminatory reason for its decision to terminate Plaintiff's employment.  *Gwen v. Regional Transit Authority*, 7 Fed.Appx. 496, 502-503, 2001 WL 345793 at **5 (6th Cir. 2001), unpublished.

Plaintiff contends that despite Defendant's termination letter to her dated December 5, 2005 stating that she was being fired due to "serious violations of the Code of Conduct and other applicable corporate policies", Defendant's conduct leads a reasonable jury to conclude that other reasons existed and the proffered reason was merely pretext to hide retaliation.  ECF Dkt. #103 at 19.  As proof of pretext, Plaintiff again stresses that upper level management and human resource employees did not appear concerned about the confidentiality of the documents that she produced and took no further steps to additionally protect the confidentiality of those documents.  *Id.* at 20.  Plaintiff even suggests that Defendant's employees intentionally failed to mark the documents confidential so that they could support their adverse employment action against her. *Id.* at 23.

This alleged lack of concern and inaction on Defendant's part fails to establish or raise a genuine issue of material fact that Defendant terminated Plaintiff's employment for any reason other than her violation of Defendant's Code of Conduct and other policies relating to the confidentiality of client documents and nondisclosure of those documents to any third-party.  Plaintiff herself testified at her deposition that:

> I was terminated because I produced documents that you— Cincinnati claims that was confidential and that's why I filed the wrongful discharge.

ECF Dkt. #90, Exhibit C, Pt. 1 of 2 at 39.  Plaintiff further testified that:

> Q:    And you testified under oath in November of 2005, did you not, that violation of the Code of Conduct is a dischargeable offense?
>
> A:    That's correct.
>
> Q:    And do you have any reason to doubt that the company believed that you had violated its Code of Conduct?
>
> A:    The company, yes.  This is what the letter says, that they believe I violated the Code of Conduct.

17

Q:      You just disagree—

A:      Yes.

ECF Dkt. #90, Exhibit D, Pt. 2 of 2 at 203-205.  Plaintiff admitted that the information contained

within the documents that she produced to her counsel was confidential.  ECF Dkt. #90, Exhibit

C, Pt. 2 of 2 at 179-187. She also admitted that she was aware and received training related to

protecting the confidentiality of Defendant's client information and that recourse for violation of

Defendant's Code of Conduct and other privacy policies was the discharge from employment.

*Id.*  She further conceded that she produced these company documents to her *Rochlin* counsel for

the nonbusiness-related purpose of establishing her claims in the *Rochlin* lawsuit itself and/or a

future retaliation claim.  *Id.* at 196-197.  In fact, Plaintiff testified that most of the documents that

she took and provided to counsel only served to trigger her memory about alleged retaliatory

incidents and did not in and of themselves establish retaliation.  *Id.*  Plaintiff cannot show that

Defendant's reason for terminating her employment for violating the Code of Conduct had no

basis in fact as Plaintiff's actions in violating policy by removing client documents and providing

them to a third-person for nonbusiness reasons constitutes a basis in fact.  Moreover, Plaintiff

cannot show that her policy violations did not actually motivate Defendant's conduct as the letter

of termination of employment stated the policy violations as the reason for termination (ECF

Dkt. #104, Exhibit G), Plaintiff herself admitted that Defendant fired her because of policy

violations (ECF Dkt. #90, Exhibit C, Pt. 1 of 2 at 39; ECF Dkt. #90, Exhibit D, Pt. 2 of 2 at 203-

205) and Mr. Stoneburner testified that he terminated Plaintiff's employment because of the

policy violations (ECF Dkt. #90, Exhibit F at 32-33).   And finally, Plaintiff cannot establish that

the reason proffered for her discharge from employment was insufficient to warrant the

18

termination of employment.  Plaintiff has not shown that other employees were kept employed even though they engaged in actions similar to hers.  *See Manzer*, 29 F.3d at 1084.

Viewing the facts in a light most favorable to Plaintiff, she cannot establish the requisite elements of a *prima facie* case of retaliation under the EPA or Title VII..  Plaintiff cannot show that her actions in providing Defendant's confidential client information to a third-party for nonbusiness personal purposes, including preparation of a retaliation claim, constitutes protected activity or that a causal connection existed between her participation in the *Rochlin* lawsuit and Defendant's termination of her employment.  Moreover, Plaintiff cannot establish that Defendant terminated her employment for any reason other than her violation of Defendant's policies against the taking of confidential information and providing it to a third-party for nonbusiness purposes.  Accordingly, the Court GRANTS Defendant's motion for summary judgment and dismisses Plaintiff's amended complaint[2] with prejudice.  ECF Dkt. #s 51, 90.

**2.      PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S COUNTERCLAIM (ECF DKT. #91)**

In Plaintiff's motion for summary judgment, she asserts that she is entitled to judgment as a matter of law on Defendant's counterclaim for common law conversion because Defendant cannot establish the elements of conversion and the record contains no evidence that Defendant suffered actual damages and therefore punitive damages are not warranted as a result of any alleged conversion.  ECF Dkt. #91 at 1.  Defendant has filed a response in opposition to the motion for summary judgment.  ECF Dkt. #101.  Plaintiff has countered with a reply.  ECF Dkt.

---

[2]  The Court has already dismissed Plaintiff's pre-termination claims to the extent that they were presented as separate claims in Plaintiff's amended complaint as Plaintiff conceded in her response to the motion for summary judgment that these claims were presented merely to help establish her main claims of retaliation under the EPA and Title VII. *See supra* at 6; ECF Dkt. #51; ECF Dkt. #103 at iv, 8.

#111.

### a.     STANDARD OF REVIEW

The same standard of review applies to Plaintiff's motion for summary judgment as set forth above at pages 4-5 for review of Defendant's motion for summary judgment.

### b.     LAW AND ANALYSIS

The Court GRANTS Plaintiff's motion for summary judgment on Defendant's counterclaim.  ECF Dkt. #91.  Under Ohio law, conversion "is the wrongful exercise of dominion over property in exclusion of the right of the owner, or withholding it from his possession under a claim inconsistent with his rights."  *Zacchini v. Scripps-Howard Broadcasting Co.*, 47 Ohio St.2d 224, 226, 351 N.E.2d 454 (1976)*, rev'd on other grounds*, 433 U.S. 562, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977).  To establish a claim of conversion, a plaintiff (which is the Defendant in this case) "must establish three elements: (1)  plaintiff's ownership or right to possession of the property at the time of conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages." *City of Findlay v. Hotels.com, L.P.,* 441 F.Supp.2d 855, 865 (N.D. Ohio 2006), quoting *Young v. City of Sandusky,* No. 3:03CV7490, 2005 WL 1491219 at *5, 2005 U.S. Dist. LEXIS 12258, at * 28 (N.D. Ohio June 23, 2005)(internal citation omitted); *see also Balt. & Ohio R.R. v. O'Donnell*, 49 Ohio St. 489, 32 N.E. 476, 478 (1892).  In addition, despite Defendant's assertion to the contrary, caselaw does hold that if property is otherwise lawfully held or acquired, then the plaintiff must additionally show that a demand was made for the return of the property and the possessor refused to return it.  *Findlay*, 441 F.Supp.2d at 865, citing *Fidelity & Deposit Co. of Maryland v. Farmers & Citizens Bank of Lancaster*, 72 Ohio App. 432, 52 N.E.2d 549 (1943).

20

Here, there is no argument that Defendant owned the documents in question, although Plaintiff did legally possess them in her home as she worked for Defendant out of her home. Further, Plaintiff did commit a wrongful act as she disseminated Defendant's documents for nonbusiness purposes to a third-party in violation of Defendant's privacy policies.  Thus, the first two elements of a conversion claim are met.

But even presuming that Defendant need not present evidence of actual damages to proceed with its case, which the undersigned questions, it cannot show that Plaintiff refused to return the documents when it demanded their return.  Defendant asserts that proof of the two additional elements is not required here because demand and refusal are conditioned upon the fact that no act of dominion or control inconsistent with the other party's ownership has taken place and Plaintiff here exerted control over the documents in a manner inconsistent with Defendant's ownership by disseminating them to a third-party in violation of its privacy policies. ECF Dkt. #101 at 7-8.  But conversion is defined as "the wrongful exercise of dominion over property in exclusion of the right of the owner, or withholding it from his possession under a claim inconsistent with his rights."  *Zacchini,* 47 Ohio St.2d 224.  Defendant cannot show that Plaintiff exercised dominion over the documents to the exclusion of Defendant's rights to the documents.  Nor can Defendant establish that Plaintiff withheld the documents from Defendant's possession.

Moreover, Plaintiff had acquired rightful possession of the documents.  In Ohio, "'[a] demand and refusal in a conversion action are usually required to prove the conversion of property otherwise *lawfully* held." *Ohio Tel. Equip. & Sales, Inc. v. Hadler Realty Co.,* 24 Ohio App.3d 91, 493 N.E.2d 289, 292 (1985) (emphasis added).  '[T]he sole object of a demand [in a

conversion action is] to turn an otherwise lawful possession into an unlawful one, by reason of a refusal to comply with it, and thus to supply evidence of a conversion.' *Fid. & Deposit Co. v. Farmers & Citizens Bank,* 72 Ohio App. 432, 52 N.E.2d 549, 550 (Ohio Ct.App.1943) (quoting *Pease v. Smith,* 61 N.Y. 477, 481 (N.Y.1875))." *Findlay,* 441 F.Supp.2d at 865.  In this case, Plaintiff did have lawful possession of the documents by virtue of the fact that they were legally in her home because she worked for Defendant out of her home.  Thus, Defendant was required to demand return of those documents and Plaintiff had to refuse to return them in order for Defendant to sustain a conversion claim.  In a footnote, Defendant contends that it satisfied the demand and return elements because it demanded return of its documents on October 25, 2005 with a letter to the collective plaintiffs' counsel in the *Rochlin* lawsuit when it demanded return of Defendant's documents from all plaintiffs in that lawsuit.  ECF Dkt. #101 at 8, fn. 2. Defendant contends that Plaintiff refused to return the documents, keeping them through November 16, 2005, the date of her deposition, and then burning some of them in the spring of 2006.  *Id.*

Defendant does not meet its reciprocal burden on summary judgment of establishing that Plaintiff refused to return the documents in her possession once demanded.  While Defendant did demand return of its documents from all *Rochlin* plaintiffs on October 25, 2005 through counsel, and Plaintiff did admit burning some documents, she testified in her deposition that she only burned documents that Defendant's representatives left at her home after retrieving Defendant's equipment and relevant documents.  Plaintiff testified that several months after Defendant terminated her employment and she allowed Defendant's representatives in her home to retrieve Defendant's equipment and evidently the relevant documents, she burned the remaining

22

documents left at her house by Defendant's representatives.  ECF Dkt. #111, Exhibit 2 at 162.

Defendant provides no evidence to show that Plaintiff refused to return the documents once it

demanded them as she granted access to Defendant's representatives to retrieve the documents.

Since Defendant cannot establish the necessary elements of its conversion claim, the

Court GRANTS Plaintiff's motion for summary judgment on Defendant's counterclaim and

dismisses the counterclaim with prejudice.  ECF Dkt. #s 7, 91.

**III.** **CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendant's motion for summary

judgment and DISMISSES Plaintiff's amended complaint in its entirety WITH PREJUDICE at

Plaintiff's cost.  ECF Dkt. #s 51, 90.  The Court further GRANTS Plaintiff's motion for summary

judgment on Defendant's counterclaim for conversion and DISMISSES Defendant's

counterclaim for conversion WITH PREJUDICE at Defendant's cost. ECF Dkt. #s 7, 91.


Dated: April 19, 2007                                    */s/George J. Limbert*
                                               GEORGE J. LIMBERT
                                               U.S. MAGISTRATE JUDGE